## J. H. FRELIGH *v.* W. L. MILLER, et al.

Every partner may, without the consent of his partners, enter into partnership with a third person for the share which he has in the partnership, but he cannot, without the consent of his partners, make a partner in the original partnership, should he even have the administration of it.

Every partner owes to the partnership all that he has promised to bring into the same. Who promises to bring into the partnership a certain thing, is bound, in case of eviction of it, in the same manner as a seller towards the purchaser who buys from him.

Plaintiff can recover upon stipulation *pour autrui* under C. P. 55; C. C. 1884, 1896. "These articles, however, do not estop the person making the stipulation from setting up equities; and the right to do so must be determined by a recurrence to such general principles of law and justice as regulate the subject of contracts."

Error as to the thing which is the subject of the contract does not invalidate it, unless it bears on the substance or some substantial quality of the thing.

APPEAL from the Fourth District Court of New Orleans, *Price, J.* *Hunton & Miller*, for plaintiff and appellant. *R. & H. Marr* and *Hays & Adams*, for defendants.

MERRICK, J.   On or about the 10th of May, 1859, the plaintiff, J. H. Freligh, J. E. Booker and M. Langhorne, chartered the steamboat Messenger as a packet to run between Memphis, Tennessee, and this city, for the term of six months.   The hire of the boat was $4500, lost or not lost.   Langhorne had one-half interest, and Booker and Freligh one-fourth each.

About the second day of July, 1859, the defendant, W. L. Miller, purchased Langhorne's interest in the charter. He paid $2250 and agreed "to take Langhorne's place as one of the orginal *charterers*, and to "occupy the same position with respect to the other *charterers*, that Langhorne had done." Miller was considered a silent partner with Langhorne from the first.

Shortly after Miller.purchased Langhorne's interest, he sold the one-half thereof to the defendant, W. J. Ashford: that is, Ashford acquired one-fourth interest directly from Miller. Miller considered himself responsible to Langhorne, and Ashford to him. But the latter came into the charter by the agreement "on the same conditions as Miller had done "and occupied the same position with reference to the other *charterers*, "so far as one-fourth interest was concerned."

Some losses had been incurred at this time. Ashford was informed before the purchase, to Miller's knowledge, that the charter was insured to the amount of one-half of the original sum, viz: $2250. He was also informed that the boat would receive $700 per trip for seven trips, for carrying the mail. Thèse representations were not true, and Miller himself was in error in regard to the same having probably been misinformed as well as Ashford by Booker, who also acted as clerk on the boat.

On the 28th day of August, 1859, the boat was lost. No money for the transportation of the mails nor insurance was received by the firm.

The plaintiff, Freligh, in addition to his portion of the price of the charter, has paid $5604 22. This suit is to compel a contribution from Miller and Ashford towards the same. The defendants waived objections as to the form of proceeding. Judgment was rendered for plaintiff against Miller. Ashford had judgment against the plaintiff, who appeals. The only question before us is in reference to Ashford's liability.

It is clear that the contract between Miller and Ashford could not make the latter a partner of the original partnership without some concurrence on the part of the other partners. C. C. 2842. Neither could the other partners hold him (Ashford) responsible to themselves as a partner without some stipulation to that effect from Ashford to Miller. In the plaintiff's petition he says that he has been informed that Ashford has assumed the position of an original party to the charter, and that he is liable for his proportion of all losses. It does not, therefore, appear, even by plaintiff's allegations, that Ashford has been treated as a partner by the other members, and plaintiff must recover, if at all, upon the *stipulation pour autrui*, for he holds no subrogation to Miller's right. Such a stipulation is perhaps implied in Ashford's agreement to occupy the same position to the original lessees of the boat as Miller had done. C. P. 35; C. C. 1884, 1896. Conceding this point to be with the plaintiff, another question arises, and that is can the plaintiff recover against the proof of the misrepresentations made to Ashford respecting the insurance and the carrying of the mail?

It is not shown that the plaintiff had any knowledge of these misrepresentations: still he now sues in affirmance of Miller's contract, and he

cannot have any greater rights under it than Miller would have had. 9 An. 196.

It is shown that when Ashford entered into the agreement he was informed by Booker, and, probably by Miller, that the charter was protected by insurance to the amount of $2250, if not $2500. He was also led to believe that the parties were entitled to carry the mail for seven trips at $700, making $4900 more. Some of the partners at that time knew that the post-office department had refused to pay for carrying the mail, and they had been so notified. A contract made under such circumstances could not be binding as between the parties, because the error bore upon a substantial quality of the thing. The larger of the two sums was more than the cost of the charter of the boat. And the two sums together would have met the losses and left a surplus of $1445 78 for distribution. These two objects are so considerable with reference to the whole charter, that we can safely conclude that Ashford, after nearly two months of the time had expired, would not have entered into the contract and given the sum he did, viz, the one-fourth of the original price, had he known the true state of facts. C. C. 1818, 1836. Had the contract been executed and Ashford received as a partner, we cannot perceive how the other partners, *ex equo et bono*, could derive any advantage from it, induced as it was by the erroneous statements of Booker, one of their number, without making an indemnity for the injury occasioned thereby. See C. C. 2827, 2828. With such indemnity made, there would be nothing to demand.

It is therefore ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed with costs.